UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| BIANCA LANG-BLACK, ) <br> ) <br> Plaintiff, ) <br> vs. ) <br> ) <br> AAA LIFE INSURANCE COMPANY, ) <br> ) <br> Defendant. ) <br> ) | Case No.: 2:23-cv-00117-GMN-DJA <br><br> **ORDER GRANTING IN PART AND DENYING IN PART SUMMARY JUDGMENT** |

Pending before the Court is the Motion for Summary Judgment, (ECF No. 73), filed by Defendant AAA Life Insurance Company. Plaintiff filed a Response, (ECF No. 81), to which Defendant filed a Reply, (ECF No. 83). Defendant also filed a Request for Judicial Notice, (ECF No. 76). Plaintiff filed a Response, (ECF No. 82), to which Defendant filed a Reply, (ECF No. 84). For the reasons discussed below, the Court GRANTS in part and DENIES in part the Motion for Summary Judgment and GRANTS the Request for Judicial Notice.

**I.     BACKGROUND**

Plaintiff Bianca Lang-Black initiated this action to recover the policy benefits of her deceased husband Jimmy's term life insurance. (*See generally* Am. Compl. ECF No. 21). The parties dispute the validity of the Policy, but the basic facts surrounding the application for and issuance of the Policy are undisputed: Plaintiff and Jimmy completed an Individual Direct Term Life Insurance Application seeking $250,000.00 in coverage on each of their lives. (Life Ins. Policy, Ex. 2 to Am. Compl., ECF No. 21-2). The application asked, "In the last 12 months, have you used nicotine in any form?"[1] (*Id.* at 28). Jimmy responded "no" to this question. (*Id.*) Jimmy further signed the application and acknowledged that all answers in the

---

[1] As Plaintiff points out, the application did not include a definition of nicotine or provide any examples of nicotine. (Resp. 7:1–6, ECF No. 81).

application were true to the best of his knowledge and belief, that the answers will be used to determine if coverage will be issued, and that in accordance with its incontestability provision, if he misstated any information on the application, the Policy may be voidable for 24 months from the issue date. (*Id.*).

Defendant AAA Life issued the Term Life Insurance Policy on June 28, 2017, with an effective date of July 3, 2017, insuring the life of James A. Black ("Jimmy") in the amount of $250,000.00 at the standard non-nicotine rate class. (*Id.* at 4).  The initial annual premium at this rate class was $815.50. (*Id.*).

Jimmy died on June 5, 2018. (Cert. of Death, Ex. 3 to Mot. Summ. J., ECF No. 74-3). Plaintiff notified Defendant of Jimmy's death on June 20, 2018. (Not. of Death, Ex. 4 to Mot. Summ. J., ECF No. 74-4).  Because Jimmy died within the Policy's two-year contestability period, Defendant conducted a contestability review. (11/26/2018 Letter, Ex. 3 to Am. Compl., ECF No. 21-3).  During this review, Defendant obtained medical records reflecting multiple admissions that Jimmy smoked tobacco in some capacity during the relevant time period. (*See, e.g.*, WellTrac Medical Rec. 5/22/2017 at 4, Ex. 12 to Mot. Summ. J., ECF No. 77-3).  Based on this evidence, AAA Life rescinded the Policy and denied Plaintiff's claim for the Policy's death benefit. (11/26/2018 Letter, Ex. 3 to Am. Compl.).  AAA Life refunded all premiums paid for the Policy. (*Id.*).

While Plaintiff took the position that AAA Life's denial of the death benefit may have been reasonable in light of the medical records obtained, she nonetheless argued that new information rendered AAA Life's continued denial unreasonable. (5/23/2019 Letter, Ex. 5 to Am. Compl., ECF No. 21-5).  According to Plaintiff, Jimmy was truthful when he told his doctors he smoked, but he was referring to smoking marijuana, not tobacco. (*Id.*).  To the extent Jimmy was not truthful to his doctors about what he smoked, Plaintiff explains that Jimmy

///

could not tell his doctors he smoked marijuana because the physical examinations were a condition of his employment. (*Id.*); (4/22/2019 Letter, Ex. 4 to Am. Compl., ECF No. 21-4).

## II.     LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)). "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citation and quotation marks omitted). In contrast, when the nonmoving party bears the burden of proving

the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied, and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  However, the nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts," *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

///

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### III. DISCUSSION

Defendant argues that it is entitled to summary judgment on Plaintiff's breach of contract, bad faith, and declaratory relief claims because it properly rescinded the insured's life insurance policy and denied Plaintiff's claim based on the insured's failure to disclose material health history—namely, that he used nicotine. (*See generally* Mot. Summ. J. 11:22–15:23). Alternatively, if the Court does not find that Defendant properly rescinded the Policy as a matter of law, Defendant argues that Plaintiff's bad faith claim nonetheless fails because its decision to rescind was reasonable. (*Id.* 15:24–18:9). Further, Defendant asserts that Plaintiff's NRS 686A.310 claim fails because (1) it is time-barred; (2) no officer, director, or department head was involved in or knowingly permitted any purported statutory violation; (3) Plaintiff cannot establish a violation of any statutory provision; and (4) Plaintiff cannot establish damages predicated on any purported statutory violation. (*Id.* 18:10–26:10). Lastly, Defendant contends that Plaintiff's demand for punitive damages fails as a matter of law. (*Id.* 26:11–27:13).

**A. A Genuine Dispute of Material Fact Remains Regarding Whether AAA Life Properly Rescinded the Policy**

Nevada law permits an insurer to rescind a policy for material misrepresentations on an application for insurance.[2] NRS 687B.110. The parties do not dispute that AAA Life issued the

---

[2] Plaintiff contends that the insurance policy did not afford Defendant the right to rescind the policy of an Insured who has died. (Resp. 13:20–21). The Policy on its face does not limit the two-year contestability period to when the Insured is living. Because Plaintiff has not provided any authority suggesting that the contestability period applies only while the Insured is alive, the Court disregards this argument at this stage.

Policy to Jimmy, the Insured, at the "standard non-nicotine" rate class based on Jimmy's negative response to a question regarding nicotine use on the life insurance application. (Policy at 4, 28, Ex. 2 to Am. Compl., ECF No. 21-2).  The parties dispute whether Jimmy's response regarding his nicotine usage was a material misrepresentation.

Defendant met its initial burden on summary judgment by presenting evidence to negate an essential element of the nonmoving party's case.  In conjunction with the undisputed evidence that Jimmy denied using nicotine during the relevant time period on the application for insurance, and that AAA Life issued the Policy at the standard non-nicotine rate class based on this denial, Defendant presents evidence suggesting that Jimmy did in fact use nicotine during the relevant time period.  For example, Jimmy checked "yes" on a medical form in response to the question, "Do you smoke or use tobacco." (WellTrac Medical Rec. 5/22/2017 at 4, Ex. 12 to Mot. Summ. J., ECF No. 77-3).  Jimmy also specified that he consumed half a cigar per day. (*Id.*).  Another medical record from Jimmy's visit to a doctor on November 29, 2016, reflects that at that time, Jimmy smoked one cigar per week. (Ensign Medical Rec. 11/29/2016 at 3, Ex. 8 to Mot. Summ. J., ECF No. 77).  Yet another medical record includes a doctor's recommendation "strongly encourag[ing] [Jimmy] to enroll in a smoking cessation program and work hard to quit smoking." (WellTrac Medical Recs. 6/5/2017 at 5, Ex. 9 to Mot. Summ. J., ECF No. 77-1).  Another indicated that Jimmy's "most significant risk to [his] future health [was his] smoking." (WellTrac Medical Rec. with Bus. Rec. Aff. at 26, Ex. 10 to Mot. Summ. J., ECF No. 77-2).  Because Defendant has demonstrated that it rescinded the Policy in light of the Jimmy's apparent misrepresentation, the burden now shifts to Plaintiff to establish the existence of a dispute of material fact.

Plaintiff raises a genuine dispute of fact regarding whether AAA Life properly rescinded the Policy.  Although Jimmy's medical records reflect that he smoked in some capacity, Plaintiff presents evidence suggesting that he smoked marijuana, not nicotine products.

Plaintiff submitted 15 affidavits of friends and family who testified that he did not smoke tobacco products. (Affs., Ex. 9 to Resp., ECF No. 81-10) ("Given the nature and extent of our close friendship, I can state that in the approximately 25 years I knew him, Jimmy never consumed tobacco products.") ("For the entire duration of my time knowing and working with Jimmy [], with us usually working the same shift, I have never seen him consume any form of nicotine.") ("In the 20 years that I knew Jimmy, I never saw him smoke or consume any form of tobacco.") ("Jimmy and I smoked a lot of pot together . . . I never observed him to consume any form of nicotine to include cigars or cigarettes.") ("I am aware he smoked marijuana, but I have never seen him smoke a cigarette, cigar, or any other form of nicotine.").

Defendant argues that Jimmy's admitted and uncontested marijuana use included the use of nicotine products. Defendant presents deposition testimony from Jimmy's friends who testified that they witnessed him consume marijuana by preparing a blunt or a joint using a cigar. (Johnson Dep. at 3–13, Ex. 14 to Mot. Summ. J., ECF No. 74-14); (Curcio Dep. at 3–5, Ex. 15 to Mot. Summ. J., ECF No. 74-15). Defendant asks the Court to take judicial notice of the fact that cigar wrappers and cigarillos contain nicotine, as set forth on publicly available, official government websites of the FDA and CDC. (Request for Judicial Not., ECF No. 76). Indeed, the CDC defines a cigar "as a roll of tobacco wrapped in leaf tobacco or in a substance that contains tobacco." (CDC Web Page, Ex. 2 to Request for Judicial Not., ECF No. 76-3). And according to the FDA, "[n]icotine is a highly addictive chemical compound present in a tobacco plant." (FDA Web Page, Ex. 1 to Request for Judicial Not., ECF No. 76-2). The Court GRANTS the request for judicial notice of information publicly available on the CDC and FDA official web pages. *See Gent v. CUNA Mut. Ins. Soc'y*, 611 F.3d 79, 84 n.5 (1st Cir. 2010).

But even taking judicial notice of the existence of nicotine in cigar wrappers, a dispute of material fact remains regarding whether Defendant properly rescinded the Policy. The issue is not whether Defendant can produce hard evidence that Jimmy used tobacco products during

the relevant time period.  Rather, the issue is whether Jimmy, to the best of his knowledge, answered truthfully that he did not use nicotine.  And the facts listed by the CDC and FDA may not have been known to Jimmy.  Moreover, the Court must view the facts in the light most favorable to Plaintiff.  In doing so, the Court may only conclude that Jimmy smoked marijuana.  Whether he used tobacco products to smoke marijuana, and whether, to the best of his knowledge, such products contained nicotine, remains a dispute of fact for trial.  Considering the voluminous testimony suggesting that Jimmy never smoked tobacco products, the Court DENIES summary judgment based on AAA Life's rescission of the Policy.  Defendant's arguments for summary judgment on Plaintiff's Breach of Contract and Declaratory Relief causes of action rest on its rescission argument, and the Court thus DENIES summary judgment on these claims.

### B.  Plaintiff's Bad Faith Claim Fails as a Matter of Law

Although the Court cannot determine as a matter of law whether AAA Life properly rescinded the Policy, Plaintiff's Bad Faith/Breach of the Covenant of Good Faith and Fair Dealing claim fails because Plaintiff cannot show that Defendant denied her claim "without any reasonable basis."  Under Nevada law, the elements of a bad faith claim are "(1) an insurer's denial of (or refusal to pay) an insured's claim; (2) without any reasonable basis; and (3) the insurer's knowledge or awareness of the lack of any reasonable basis to deny coverage, or the insurer's reckless disregard as to the unreasonableness of the denial." *Siefers v. PacifiCare Life Assur. Co.*, 729 F. Supp. 2d 1229, 1236 (D. Nev. 2010), *aff'd,* 461 F. App'x 652 (9th Cir. 2011). "[B]ad faith requires an insurer's denial of benefits to be both objectively and subjectively unreasonable." *Ragonesi v. Gewico Cas. Co.*, No. 2:20-CV-1280, 2020 WL 7643225, at *3 (D. Nev. Dec. 23, 2020).

Even if a jury later determines that AAA Life's rescission of the Policy and refusal to pay the death benefits was incorrect, Defendant's denial was reasonable in the light of the facts

and circumstances of this claim. *See Phillips v. Clark Cnty. Sch. Dist.*, 903 F. Supp. 2d 1094, 1104 (D. Nev. 2012). Defendant obtained medical records refuting Jimmy's statement that he did not use nicotine. Regardless of whether rescission was proper, AAA Life's decision at least had a reasonable basis to rescind the Policy. *Goodrich v. Garrison Prop. & Cas. Ins. Co., Inc.*, 526 F. Supp. 3d 789, 801 (D. Nev. 2021) (quoting *Powers v. United Serv. Auto. Ass'n*, 962 P.2d 596, 604 (Nev. 1998)) ("To establish a prima facie case of bad-faith refusal to pay an insurance claim, the plaintiff must establish that the insurer had no reasonable basis for disputing coverage, and that the insurer knew or recklessly disregarded the fact that there was no reasonable basis for disputing coverage."). The Court therefore GRANTS summary judgment for Defendant on Plaintiff's Bad Faith/Breach of the Covenant of Good Faith and Fair Dealing claim.

### C. Plaintiff's Prayer for Punitive Damages Fails as a Matter of Law

Plaintiff's prayer for punitive damages similarly fails. To recover punitive damages, a plaintiff must prove "by clear and convincing evidence that the defendant is 'guilty of oppression, fraud or malice, express or implied.'" *Fernandez v. State Farm Mut. Auto. Ins. Co.*, 338 F. Supp. 3d 1193, 1202 (D. Nev. 2018) (quoting *Bongiovi v. Sullivan*, 138 P.3d 433, 450–51 (Nev. 2006)). Plaintiff argues that Defendant acted fraudulently by "telling the consumer that the application Defendant AAA found accurate for purposes of auto-deducting [from the consumer's] bank account is now inaccurate once it's obligation to pay is due and owing." (Resp. 29:6–8). Plaintiff further asserts that Defendant "has the intent to harm or injure because Defendant AAA does not contest the accuracy until the person who answered the application based on his or her *personal* knowledge now cannot defend his or her application." (*Id.* 29:10–13). The Court sympathizes with Plaintiff's frustration; had AAA Life investigated Jimmy's nicotine usage before issuing the Policy, AAA Life may have simply tendered the Policy at a different rate, and Plaintiff would at least still have death benefits. But Nevada law

expressly permits an insurer to rely on representations in an application for life insurance without conducting an investigation of each and every application. NRS 687B.110.  And in signing the application, Jimmy acknowledged that the Policy may be voidable for 24 months if he misstated any information on the application. (Life Ins. Policy at 28).  Because Plaintiff fails to identify any conduct warranting punitive damages, the Court GRANTS summary judgment for Defendant on this issue.

### D.  Plaintiff's NRS 686A.310 Claim

Defendant argues that Plaintiff's NRS 868A.310 claim fails for four reasons: (1) it is time-barred; (2) no "officer director, or department head" was involved in or knowingly permitted any purported statutory violation; (3) Plaintiff cannot establish a violation of any statutory provision; and (4) Plaintiff cannot establish damages predicated on any purported statutory violation.  Because the Court agrees that Plaintiff's claim is time-barred, the Court does not address Defendant's alternative arguments.

An Unfair Claims Practices Act claim under NRS 686A.310 has a three-year statute of limitations. NRS 11.190(3).  Generally, "a cause of action accrues when the wrong occurs and a party sustains injuries for which relief could be sought." *Petersen v. Bruen*, 792 P.2d 18, 20 (Nev. 1990).  In the insurance context, claims accrue for statute of limitations purposes from the date of claim denial. *State Farm Mut. Auto. Ins. Co. v. Fitts*, 99 P.3d 1160, 1162 (Nev. 2004).

Here, Defendant denied Plaintiff's claim and rescinded the Policy in a letter dated November 26, 2018. (11/26/2018 Letter, Ex. 3 to Am. Comp., ECF No. 21-3).  Plaintiff did not file this suit until October 25, 2022, almost four years later.  Plaintiff nonetheless argues that her claim is not time barred because ongoing investigations, negotiations, and appeals continued through June of 2022. (Resp. 20:13–17).  According to Plaintiff, the "denial of the claim is not until the final investigation and/or offer to compromise is made." (*Id.* 20:21–22).

But Plaintiff does not offer any legal authority for her interpretation of when an insurance claim accrues. Moreover, as Defendant notes, under Plaintiff's theory, "a party could elect to retain counsel to send a demand letter and force an 'investigation to continue' for years (or decades) so long as a claimant's counsel declines to respond for 1-2 years at a time." (Reply 11:20–22). Because Plaintiff's NRS 686A.310 claim accrued on the date Defendant denied her life benefits, Plaintiff's claim is untimely. The Court therefore GRANTS summary judgment for Defendant on Plaintiff's NRS 686A.310 claim.

### IV.  CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment, (ECF No. 73), is **GRANTED in part and DENIED in part**. The Court GRANTS summary judgment for Defendant on Plaintiff's Bad Faith/Breach of the Covenant of Good Faith and Fair Dealing Claim and NRS 686A.310 claim. The Court further GRANTS summary judgment for Defendant on the issue of punitive damages. The Court DENIES summary judgment on Plaintiff's Breach of Contract and Declaratory Relief claim.

**IT IS FURTHER ORDERED** that Defendant's Request for Judicial Notice, (ECF No. 76), is **GRANTED**.

**DATED** this __16__ day of August, 2024.

_____
Gloria M. Navarro, District Judge
United States District Court